IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| FRANKLIN W. BIAS | § | |
| v. | § | CIVIL ACTION NO. 6:21cv291 |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION, ET AL. | § § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Franklin Bias, proceeding *pro se*, filed this lawsuit complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants in Plaintiff's amended complaint are the Texas Department of Criminal Justice, Correctional Institutions Division; TDCJ Executive Director Bryan Collier; Texas Board of Criminal Justice Chairman Patrick O'Daniel; and Warden Lonnie Townsend of the Michael Unit of TDCJ-CID.

**I. Background**

Plaintiff filed his original complaint in the form of a "motion for emergency injunction." He contends that on June 25, 2021, the Defendants announced a new mail policy, effective August 1, 2021, under which inmates are not allowed to possess or receive by mail any material in publications, photographs, drawings, or any type of image which depicts sexual behavior, is intended to cause sexual arousal such as lingerie, thongs, sex toys, or an individual with an erection, which shows nudity including exposed female breasts with nipples or areolas, genitalia, the anus, the buttocks or partially covered buttocks, shows the discharge of bodily fluids in the context of sexual

1

activity, or any photo which conceals or hides the face of the individual photographed in a manner which prevents identification of that individual.

Plaintiff stated that on July 1, 2021, the Defendants posted this announcement, putting inmates on notice that possession of the above materials would be considered contraband and subject inmates to disciplinary action if not removed from their possession by August 1. This forced inmates to either destroy or send home such items, even though the items were legal and in compliance with policy as it existed up to that time.

Plaintiff argued that the change in policy is "content-based on its face and thus presumptively invalid." He claimed that the Defendants have the burden of showing that these restrictions pursue a legitimate compelling state interest and are narrowly tailored to achieve that interest. Plaintiff further maintains that the new policy is vague and overbroad.

In his amended complaint (docket no. 16), Plaintiff contends that since 2004, the Texas Board of Criminal Justice has constantly revised Board Policy 3.91, governing inmate correspondence, so as to target nude and non-nude artistic expressions which are constitutionally protected. He says that content-based restrictions are presumptively invalid and that the policies are vague and overbroad. For example, Plaintiff states that the policy restricts photos "which may cause sexual arousal," asking "by whose opinion?"

Plaintiff asserts that TDCJ Executive Director Bryan Collier has "embraced policy revisions so as to eradicate suggestive erotic material from the institutions he controls," which he says gives wardens, the Director's Review Committee, the MRSC, and staff "full arbitrary and capricious authority over the removal of the once authorized inmate personal property to the now authorized deprivation of inmate property" in violation of the Constitution.

In keeping with the new directive, Plaintiff states that Warden Lonnie Townsend issued a "notice to inmates" warning them to dispose of contraband in their possession, even though this property had previously been allowed. Plaintiff contends that the notice is "a fraudulent document" because it cites BP 3.9.1 as the controlling policy, but this policy governs correspondence, not the

property which inmates possess. Plaintiff states that the Director and wardens sent officers to shake down inmates who possessed property which now was contraband and wrote disciplinary cases for possession of pornographic inmates. He says that "with the threat of disciplinaries and the threats of the notice, Plaintiff and class members destroyed their own personal property by fraudulent means alleviating TDCJ of liability." Plaintiff adds that "with malice and intent by fraudulent means of reckless disregard of inmate property, defendants violated Plaintiff's 1st, 5th, 14th USCA rights."

For relief, Plaintiff asks for a preliminary injunction barring the Defendants from implementing the new policies contained in BP 3.91 and Administrative Directive 03.72, a permanent injunction "from future deprivations of liberties by TDCJ," a declaratory judgment "to declare the rights, privileges, and immunities that are prescribed by the United States Constitution and the laws therein that never shall be subjugated through Government intrusion," an award of "presumed and punitive damages," and attorney fees and court costs.

Plaintiff offers an alternative to the censorship of publications, including educating and training mailroom personnel in the legal standards of inmates' constitutional rights, conversion of part of the Directors Review Committee (which reviews appeals of denied correspondence) into a five member committee which would pre-approve publications, and the hiring of more men in the mailrooms since Plaintiff believes that men "would be less likely to apply their personal opinions and beliefs in making censorship decisions."

Plaintiff next makes an obscure argument about how trafficking and trading is "a staple of prison life world-wide" and if it is the goal of TDCJ to stop it, then all of the commissaries should be closed. He says that if the goal is to stop the trafficking and trading of sexually explicit photos and magazines, then a policy should be created to limit the amount of photos and magazines which an inmate may possess. However, he then argues that the trading of photos and magazines is beneficial to inmates and the administration alike.

After again reciting the policy, Plaintiff states that TDCJ uses four techniques to control inmates - dayroom and TV's and phones, visitation restrictions, commissary restrictions, and

disciplinary actions. He says that inmates do not want to receive disciplinary cases and that most inmates will police themselves of any contraband. Plaintiff says that on August 1, 2021, the date the new policy went into effect, "female photos plagued Michael Unit trash receptacles based on the unsigned warning / notice the administration posted citing a revision to BP 3.91." Plaintiff adds that the administration needed to send a message to all of the inmates, so they sent a crew to search a dorm and confiscated all magazines and photos from three inmates, including photos of one inmate's wife in lingerie. Plaintiff states that disciplinary cases were written and investigated but never prosecuted; the intent was to get inmates motivated into discarding their own property, even though the property had previously been authorized for prisoners to possess.

Plaintiff attaches a Step One grievance from an inmate named Robert Edwards, complaining that the new policy violated the Constitution. The grievance was screened (i.e. returned unprocessed) with the notation that the issue presented is not grievable.

## II. The Defendants' Motion to Dismiss

The Defendants have filed a motion to dismiss arguing that: (1) Plaintiff lacks standing to bring his claim; (2) Plaintiff failed to exhaust his administrative remedies; (3) the Defendants have Eleventh Amendment immunity from official-capacity claims for monetary damages; (4) Plaintiff has failed to state a claim under the First, Fifth, or Fourteenth Amendments; (5) Plaintiff has no physical injury as required for monetary damages; and (6) Plaintiff's claims against the Defendants in their individual capacities are barred by qualified immunity. Plaintiff did not file a response to the Defendants' motion to dismiss.

## III. Discussion

### A. General Standards on Motions to Dismiss

Fed. R. Civ. P. 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief which is plausible on its face. *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007)). The Supreme Court stated that Rule 12(b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555.

Fed. R. Civ. P. 8(a) does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Courts need not accept legal conclusions as true, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient. *Id.* at 678.

A plaintiff meets this standard by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," or if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability. *Id.*; *see also Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006).

*Pro se* plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations which raise the right to relief above the speculative level. *Chhim v. University of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

If the facts alleged in a complaint do not permit the court to infer more than the mere possibility of misconduct, a plaintiff has not shown entitlement to relief. *Id.* (citing Fed. R. Civ. P. 8(a)(2)). Dismissal is proper if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. *Rios*, 444 F.3d at 421.

The Fifth Circuit has explained that while *pro se* complaints are construed liberally, the court is still bound by the allegations of the complaint and is not free to speculate that the plaintiff "might"

be able to state a claim if given yet another opportunity to amend the complaint. *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). The court explained as follows:

> For example, if an IFP plaintiff, in amending his complaint through a response to a questionnaire, alleges in his response that he received inadequate medical care while incarcerated, we should not reverse the dismissal of the complaint on the basis that the plaintiff could possibly add facts that would demonstrate that he was treated with deliberate indifference in the medical care that he received. As another example, if an IFP prisoner asserts in the questionnaire response that he has been denied recreation time, we should not reverse dismissal on the ground that he might also be able to assert a claim that the denial was in retaliation for his having filed a grievance.

*Id*. at 97.

B. Application of the Standards

In *McCullough v. O'Daniel*, slip op. no. 2:21cv176, 2022 U.S. Dist. LEXIS 142358, 2022 WL 3219802 (S.D.Tex., July 6, 2022), the plaintiff Jabri McCullough challenged the constitutionality of the newly revised Board Policy 03.91, prohibiting the receipt of sexually explicit images. The court said that under the new policy, the term "sexually explicit image" is defined as

> Material in publications, photographs, drawings, or any type of image, which depicts sexual behavior, is intended to cause sexual excitement or arousal, or shows frontal nudity of either gender, including the exposed female breast(s) with nipple(s) or areola(s); the genitalia, anus, or buttocks, or partially covered buttocks of either gender; the discharge of bodily fluids in the context of sexual activity; or sexual behavior from any vantage point.

The court went on to state that the amended policy provides that all incoming correspondence containing an explicit image shall be disapproved for receipt. The policy also sets out procedures for reviewing incoming correspondence and publications in the mailroom and for inmates to appeal any decision denying incoming correspondence or publications. Specifically, the policy provides that all publications are subject to inspection by the Mail System Coordinators Panel (MSCP) and by unit staff, with the MSCP having the authority to accept or reject a publication for content, subject to review by the Director's Review Committee. A publication may be rejected if it contains sexually explicit images, but subject to review by the MSCP on a case by case basis, publications constituting educational, medical, scientific, or artistic materials, including anatomy, medical

reference books, general practitioner reference books or guides, National Geographic, or artistic reference materials depicting historical, modern, or post-modern eras may be permitted.

McCullough argued that after the policy went into effect on August 1, 2021, TDCJ inmates became subject to disciplinary action if they were found to be in possession of images of art depicting women in thongs, bikinis, or G-strings in photos or magazines. He filed a Step One grievance but it was returned unprocessed because the issue was not grievable.

The Southern District explained that in evaluating the constitutionality of a prison regulation which impinges on an inmate's constitutional rights, the court must determine whether the government objective underlying the regulation at issue is legitimate and neutral, and that the regulations are rationally related to that objective. *Id.* at *13-14, *citing Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) *and Thornburgh v. Abbott*, 490 U.S. 401, 414-15, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). The Fifth Circuit has held that prison officials do not violate an inmate's First Amendment rights by limiting the inmate's access to sexually explicit materials even if they are not obscene in order to further a legitimate interest in preventing deviate, criminal sexual behavior in the prison population. *Thompson v. Patteson*, 985 F.2d 202, 205-06 (5th Cir. 1993).

More recently, in *Stroble v. Livingston*, 538 F.App'x 479, 2013 U.S. App. LEXIS 16569, 2013 WL 4038826 (5th Cir., August 9, 2013), the plaintiff complained that prison officials improperly applied the policies concerning sexually explicit materials and so he was denied access to images which were permissible. The Fifth Circuit reiterated that prison officials may limit access to sexually explicit materials even if they are not obscene and stated that "prison rules necessarily confer a certain degree of discretion on prison authorities" to determine what constitutes sexually explicit materials. Based upon these precedents, the Southern District determined that McCullough's challenge to Board Policy 03.91 lacked merit.

Likewise, in *Thompson v. Lumpkin*, civil action no. 2:21cv154, 2022 U.S. Dist. LEXIS 162894, 2022 WL 4110926 (S.D.Tex., July 6, 2022), the plaintiff Oreville Thompson contended that

Board Policy 03.91 violated his rights under the First and Eighth Amendments as well as his rights to due process and equal protection. He argued that the revised policy impermissibly broadened the definition of sexual explicitness. The Southern District held that the First Amendment does not mandate that prison officials provide definitions or explain the reasoning behind their regulations to inmates, and emphasized that prison officials are afforded deference in promulgating policies necessary to maintain discipline and legitimate penological goals.

The court further stated that the plaintiff's allegations challenging the definition of "sexually explicit image" as overbroad are insufficient to show that the policy is not rationally related to legitimate penological interests such as maintaining discipline and preventing inappropriate sexual behavior among inmates. Thus, the court determined that Thompson's First Amendment claim lacked merit. The court also rejected Thompson's claims that the policy imposed cruel and unusual punishment or violated his rights to due process and equal protection.

In *Guajardo v. Estelle*, 580 F.2d 748, 762 (5th Cir. 1978), *overruled in part on other grounds in Thornburgh*, the Fifth Circuit rejected the view that prison officials could only ban materials which had been judicially declared as obscene. Instead, the court determined that prison officials could limit access to sexually explicit material. Because such limits could not be guided simply by the whims of administrators, the court explained that before delivery of a publication may be refused the prison administrators must review the particular issue of the publication in question and make a specific, factual determination that the publication is detrimental to prisoner rehabilitation, and prisoners must be allowed to appeal the decision through proper administrative channels.

In the present case, Plaintiff complains that the revision to Board Policy 03.91 targets "nude and non-nude artistic expressions that are constitutionally protected." He argues that content-based infringements are "presumptively invalid" and says that the policy is "vague and overbroad." While content-based regulations may be presumptively invalid in some situations, *see City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986), *citing Carey v. Brown*, 447 U.S. 455, 462-63 and n.7, 199 S.Ct. 2286, 65 L.Ed.2d 263 (1980), a different rule applies in the prison context. Prison

inmates retain those constitutional rights which are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system. Specifically, prisoners enjoy the protections of the First Amendment except to the extent that prison regulations curtailing those protections are reasonably related to legitimate penological interests. *Prison Legal News v. Livingston*, 683 F.3d 201, 213 (5th Cir. 2012). The Fifth Circuit has held that limitations on sexually explicit materials further legitimate penological interests and thus do not violate the First Amendment. *Stroble*, 538 F.App'x at *480. Plaintiff's contention that the amended Board Policy 03.91 violates the First Amendment fails to state a claim upon which relief may be granted.

Plaintiff's claim that the regulation is "vague" and "overbroad" is conclusory and also is not sufficient to establish that the regulation is not rationally based on a legitimate penological goal. *Thompson*, 2022 WL 4110926 at *8; *see also Greer v. Collier*, civil action no. 4:21cv3976, 2023 U.S. Dist. LEXIS 90546, 2023 WL 3628272 (S.D.Tex., May 23, 2023) (rejecting claim that the definition of "sexually explicit image" in BP 03.91 is vague and overbroad). This argument likewise fails to state a claim upon which relief may be granted.

Plaintiff next asserts that the new policy deprived inmates of property which they had previously been allowed to have. He complains that the Director and wardens sent officers to conduct shakedowns and give the inmates disciplinary cases if they possessed pornographic images. As a result, Plaintiff states that he and other inmates destroyed their property so as to avoid the disciplinary cases.

The fact that the property had been permitted under the prior Board Policy did not give Plaintiff a property or liberty interest in retaining it once the policy changed. The Fifth Circuit has held that prisoners do not have a property interest in contraband. *Sullivan v. DeRamcy*, 460 F.App'x 374, 2012 U.S. App. LEXIS 2761, 2012 WL 425788 (5th Cir. 2012). Once the policy changed and the property became contraband, Plaintiff no longer had a constitutionally protected interest in possessing it. *See also Lyon v. Farrier*, 730 F.2d 525, 527 (8th Cir. 1984) (inmate has no protected

property interest in contraband); *Baker v. Piggott*, 833 F.2d 1539, 1540 (11th Cir. 1987) (confiscation of contraband does not violate an inmate's due process rights).

Even if Plaintiff did have a property interest in the items, he received the process he was due. He acknowledges that he was given notice of the change in Board policy and offers nothing to suggest that he could not be heard with regard to his pictures through the grievance process or through an appeal to the MCSP or the DRC.[1] This assertion fails to state a claim upon which relief may be granted. *See also Texiera v. O'Daniel*, civil action no. A-22-cv-1155, 2023 U.S. Dist. LEXIS 71601, 2023 WL 3082350 (W.D.Tex., April 25, 2023) (rejecting challenge to BP 03.91 based on plaintiff's claim that he was receiving pictures of his significant other; the court also rejected plaintiff's claim that he was denied due process in the confiscation of his pictures). This assertion fails to state a claim upon which relief may be granted.

Plaintiff also appears to argue that the notice given to the inmates is "fraudulent" because it sets out BP 03.91 as the controlling policy, but this policy refers to inmate correspondence, not the property which they are allowed to possess. As noted above, the notice (docket no. 16-4, p. 1) says that effective August 1, 2021, inmates cannot possess or receive by mail any material in publications, photographs, drawings, or any type of image which depicts sexual behavior, is intended to cause sexual arousal such as lingerie, thongs, sex toys, or an individual with an erection, which shows nudity including exposed female breasts with nipples or areolas, genitalia, the anus, the buttocks or partially covered buttocks, shows the discharge of bodily fluids in the context of sexual activity, or any photo which conceals or hides the face of the individual photographed in a manner which prevents identification of that individual. The notice goes on to say that beginning August 1, 2021, any such items would be considered contraband and inmates would be subject to disciplinary action if they possess such items. Inmates will not be able to receive these items by mail. All inmates are put on notice to remove such items from their possession before August 1,

---

[1] Plaintiff offers evidence that the change in policy itself was not grievable, but does not show that he had no avenues of appeal with regard to claiming that for his particular pictures or other items should be allowed.

2021. The notice concludes by saying "please refer to Board Policy 3.91, as amended on June 25, 2021, for further details."

The fact that the notice refers to Board Policy 3.91 rather than a different directive governing property does not make it unconstitutional or "fraudulent." The notice adequately informed inmates of the new rule going into effect and advised them of what actions to take to remain within the rules. Plaintiff has failed to state a claim upon which relief may be granted, nor has he shown any basis upon which to issue a permanent injunction.

## IV. Conclusion

In proceeding under Fed. R. Civ. P. 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon. These procedures alert him to the legal theory underlying the defendants' challenge and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid cause of action. This adversarial process also crystallizes the pertinent issues and facilitates appellate review of a trial court dismissal by creating a more complete record of a case. *Neitzke v. Williams*, 490 U.S. 319, 329-30, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff had the opportunity to respond to the Defendants' motion to dismiss. A review of the pleadings, viewed with the liberality befitting his *pro se* status, demonstrates that Plaintiff has failed to state a claim upon which relief may be granted. The Defendants' motion to dismiss should be granted and the lawsuit dismissed with prejudice. *Sepulvado v. Louisiana Board of Pardons and Parole*, 114 F.App'x 620, 2004 U.S. App. LEXIS 23299, 2004 WL 2491678 (5th Cir., November 5, 2004), *citing Hitt v. Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

## RECOMMENDATION

It is accordingly recommended that the Defendants' motion to dismiss (docket no. 30) be granted and the above-styled civil action be dismissed with prejudice.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

So ORDERED and SIGNED this 24th day of July, 2023.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE